# In the United States Court of Federal Claims

Case No. 08-196C
FOR PUBLICATION
Filed: March 10, 2010

* * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| | * | |
| **C.R. PITTMAN CONSTRUCTION** | * | |
| **COMPANY, INC.,** | * | |
| | * | |
| *Plaintiff,* | * | Summary Judgment; RCFC 56(c); |
| | * | Hurricane Katrina; Contract Interpretation; |
| v. | * | Plain Meaning. |
| | * | |
| **UNITED STATES**, | * | |
| | * | |
| *Defendant.* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * *

*Gerald A. Melchiode,* Trial Attorney, with whom were *William J. Perry* and *Jason J. Markey*, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, Louisiana; *J. Michael Littlejohn* and *Hal J. Perloff*, Akerman Senterfitt Wickwire Gavin, Vienna, Virginia, of Counsel, for Plaintiff.

*Timothy McIlmail,* Trial Attorney, with whom were *Michael Hertz*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; *Mark A. Melnick*, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant. *William G. Meiners,* Office of Counsel, United States Army Corps of Engineers, for Defendant.

## OPINION and ORDER

**SMITH,** Senior Judge:

This dispute arose after flooding from Hurricane Katrina damaged equipment that was necessary for the performance of two contracts between the Plaintiff, C.R. Pittman Construction Co., Inc., and the United States Army Corps of Engineers. Plaintiff alleges that a clause in both contracts, specifically the Damage to Work Clause, entitles Plaintiff to payment for the damaged equipment. The parties filed cross-motions for summary judgment on the issue, and oral argument was held in New Orleans, LA. After careful review and consideration, and for the reasons set forth below, the Court holds that the Defendant is not responsible for the flood-damaged equipment under the contracts.

1

# I. FACTS

On September 20, 2000, the Army Corps of Engineers (the Corps) awarded C.R. Pittman Construction Co. a fixed-price contract for the construction of the Southeast Louisiana Urban Flood Control Project, Dwyer Road Pumping Station in Orleans Parish, LA (Dwyer Contract). (Pl.'s Summ. J. Mot. on Damage to Work Clause 2.)  The Dwyer Contract included demolition and removal of the existing pump station, purchase of equipment and materials, and construction of a new pump station.  On September 16, 2002, the Corps awarded Plaintiff a second fixed-price contract for the construction of a similar pumping station in Jefferson Parish, LA (Cousins Contract).  The Cousins Contract included the purchase of equipment and materials, and construction of a new pump station.  *Id.*

As required under the Contracts, Plaintiff purchased the equipment and materials for the contracts, the Corps made progress payments to the Plaintiff to purchase specified equipment, and Plaintiff stored certain equipment and materials at an agreed upon off-site storage area prior to construction and installation.  *Id.* at 4.  The off-site equipment included generators, climber screen cleaners, and pumps.  *Id.* at 3.  On August 29, 2005, Hurricane Katrina struck the New Orleans area, flooding the storage sites and damaging the off-site equipment.  Both parties agree that the flood damage to the off-site equipment will require total replacement or substantial refurbishment, prior to its installation.  *Id.* at 4.

On March 6 and 7, 2006, the Corps demanded that Plaintiff replace the damaged equipment.  On July 11, 2006, the Corps advised the Plaintiff that the Corps had overpaid progress payments because the damaged equipment's value no longer warranted the progress payments.  *Id.*  In response to Defendant's assertion that Plaintiff had been overpaid, the Plaintiff put the Corps on administrative notice that the damaged equipment fell under the scope of the Damage to Work Clause as "part of the permanent work" and, therefore, the contracts placed responsibility for the damaged equipment on the Corps.

# II. PROCEDURAL HISTORY

On April 6, 2007, the Contracting Officer issued two final decisions pertaining to each Contract, ordering Plaintiff to return to the Corps a total of $2,340,109.53 in progress payments, which were earlier paid for the equipment.  On May 3, 2007, Plaintiff filed suit against the Corps in the United States District Court for the Eastern District of Louisiana, pursuant to the Federal Tort Claims Act, for flood damage to property seeking supplemental jurisdiction or pendent jurisdiction for the Corps' breach of contract.  (Pl.'s Summ. J. Mot. on Deferment of Collection 1-2.)  On May 22, 2007, Plaintiff formally requested a deferment of collection for the Contracting Officer's order to return payment, in order to avoid financial hardship.  *Id.* at 3.

The Contracting Officer forwarded Plaintiff's deferment of collection request to the United States Attorney's Office.  After an agreement was reached with the United States Attorney's Office deferring collection (Deferment of Collection Agreement), the parties submitted a joint order to the District Court.  Thereafter, the District Court issued an Order

recognizing the Deferment of Collection Agreement. *Id.* at 4. The Deferment of Collection Agreement states: "It is further ordered that [Plaintiff] is granted a deferment of collection of the claim at issue in this case during the pendency of the determination of [Plaintiff's] action against the Corps." (Def.'s Resp. to Pl.'s Mot. on Deferment of Collection 5.)

On October 26, 2007, the Contracting Officer informed Plaintiff that "all contract earnings that have been withheld prior to September 2007 will continue to be withheld until the resolution of [the matter in the District Court]." *Id.* On January 22, 2008, the District Court dismissed the matter without prejudice for jurisdictional reasons. Thereafter, Plaintiff re-filed its action in this Court and requested that the Court recognize the Deferment of Collection Agreement. (Pl.'s Summ. J. Mot. on Deferment of Collection 4.)

After Plaintiff filed this action, the Defendant filed a Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction. *Id.* at 4-5. After briefing and oral argument, the Court deferred judgment on the Motion to Dismiss and requested that the parties fully brief the core issues relating to the Contract language. Plaintiff then filed two Motions for Summary Judgment with the Court.

First, Plaintiff filed a Motion for Summary Judgment on the Damage to Work Clause, arguing that the Defendant is responsible for the damaged equipment. Plaintiff also filed a second Motion for Summary Judgment on Deferment of Collection, in which Plaintiff argued that the Corps breached the agreement between the parties to defer collection of the amounts specified in the Contracting Officer's final decisions.

In response, Defendant filed a Cross-Motion for Partial Summary Judgment on the Issue of Responsibility for Damage to Equipment, arguing that the contracts impose responsibility on the Plaintiff for the damaged materials at issue. Defendant also filed a Motion to Strike and Response to Plaintiff's Motion for Summary Judgment on Deferment of Collection. Following full briefing and oral argument, the Court now addresses the cross-motions for Summary Judgment on the issue of who is responsible for the flood-damaged equipment.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine disputes over material facts and the moving party is entitled to prevail as a matter of law. RCFC 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those facts that "might affect the outcome" of the litigation. *Id.* at 248. A genuine dispute concerning a material fact exists when the evidence presented would permit "a reasonable jury [to] return a verdict for the non-moving party." *Id.* Thus, in order to prevail upon a motion for summary judgment, a party must demonstrate that no disputed facts exist that would change the outcome of the litigation. Any doubt over a factual issue must be resolved in favor of the non-moving party, to whom the benefit of presumptions and inferences runs. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold Inc.*, 369 U.S. 654, 655 (1962)).

# IV. DISCUSSION

In this case, responsibility for the cost of the damaged equipment rests upon the Court's interpretation of the Damage to Work Clause, and what is considered "part of the permanent work" under that Clause. In its Motion for Summary Judgment on the Damage to Work Clause, Plaintiff raises three arguments as to why the Defendant is responsible for the replacement costs of the damaged equipment. First, Plaintiff argues that, by definition and ordinary meaning, the damaged equipment stored off-site was "part of the permanent work" as described in the Damage to Work Clause. Second, Plaintiff argues that various other clauses within the contracts would be superfluous if the Damage to Work Clause excluded uninstalled equipment as "part of the permanent work." Third, Plaintiff claims that the Defendant's course of performance indicates that the Damage to Work Clause applies to the damaged equipment in this case.

In response, the Defendant asserts that: (1) the Damage to Work Clause is not ambiguous; (2) the Court should adhere to the ordinary and plain meaning of "part of the permanent work;" and (3) "part of the permanent work" does not include the flood-damaged equipment in this case. Responding to Plaintiff's third argument, the Defendant argues that it did not establish a course of performance that is applicable to these facts.

For the reasons stated below, the Court holds that the ordinary meaning of the Damage to Work Clause does not include the off-site equipment damaged in this case and, therefore, the Defendant is not responsible for the flood damage to the uninstalled, off-site equipment. Thus, Plaintiff's claim under the Contracts must fail.

## A. Interpreting the Damage to Work Clause in the Contracts

Even when the United States is a party to a contract, the Court still applies the general rules of contract construction. The Court must thus begin with the plain meaning of the contract language, when interpreting the contract, and must give the words their ordinary meaning, unless the parties mutually intended and agreed otherwise. *Jowett, Inc. v. United States*, 234 F.3d 1365, 1368 (Fed. Cir. 2000). If the "provisions are clear and unambiguous, they must be given their plain and ordinary meaning." *Alaska Lumber & Pulp Co. v. Madigan,* 2 F.3d 389, 392 (Fed. Cir. 1993). The court may not resort to extrinsic evidence to interpret the unambiguous provisions. *See McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). Therefore, when the words of a contract are clear and explicit, no further interpretation is needed to search for the parties' intent. Since there is no evidence in this case of a specialized or technical meaning to these terms, or that the phrase is a term of art, the question currently before the Court is what does the phrase "part of the permanent work" mean in the Contracts according to its plain and ordinary meaning?

**1. The Damage to Work Clause**

In order to interpret the phrase "part of the permanent work," the Court must begin by looking at the actual language of the Damage to Work Clause found in the Contracts.  In pertinent part, the Clause states that:

> The responsibility for damage to any *part of the permanent work* shall be as set forth in the . . . [Permits and Responsibilities Clause].  However, if, in the judgment of the Contracting Officer, any *part of the permanent work* performed by the Contractor is damaged by flood . . . [and] is not due to the failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices . . . the Contractor shall make the repairs . . . and full compensation for such repairs will be made . . . as fixed and established in the contract.

(Pl.'s Summ. J. Mot. on Damage to Work Clause at 5 (emphasis added).)  The Court must now define what the phrase "part of the permanent work" means.

**2. "Part of the Permanent Work"**

First, the parties agree that the Board for Contract Appeals has interpreted "permanent work" to be work that is the "chief purpose of the contract."  *E.g. Diversacon Indus.,* ENG BCA Nos. 3284, 3486, 76-1 BCA ¶11,875 at 56,896.  In addition, the Plaintiff provides that "permanent work" is "work performed by the contractor which would become a part of the completed project, as opposed to that of a temporary nature which would not become a part of the completed project."  *Utility Contractors Inc. v. United States,* 8 Cl. Ct. 42, 48 n.5 (1985).  Therefore, Plaintiff contends that the off-site and uninstalled equipment, which will eventually become part of the final pumping station, should be covered under the Damage to Work Clause allowing Plaintiff to recover the costs of replacing the damaged equipment.  Thus, a temporary scaffolding would never be "part of the permanent work."  Similarly, it is clear that a foundation, even before project completion, is "part of the permanent work."

In response, the Defendant argues that *Utility Contractors* is not applicable to this case.  The question presented in that case was not whether off-site, uninstalled equipment was "part of the permanent work," but rather, which party must pay for damage to the permanent construction site, prior to the completion of the contract.  *See Utility Contractors*, 8 Cl. Ct. at 46-48.  The Defendant further argues that, at the time it was damaged, the off-site and uninstalled equipment was at most "parts for" the pumping station, and not "part of" the pumping station.  (Def.'s Cross-Motion for Summ. J. 10.)

Defendant also advances its own definition.  First, as stated above, the parties agree that "permanent work" is work that is the "chief purpose of the contract."  Second, the Defendant addresses the only remaining disputed term, arguing that "part" means "one of the . . . subdivisions . . . into which something is or is regarded as divided and which together constitute

5

the whole." Webster's Ninth New Collegiate Dictionary 857 (1985). The Defendant argues that the ordinary meaning of "part of the permanent work" is "a subdivision of the whole that is the chief purpose of the contract." (Def.'s Reply 5.) The Defendant claims that only the pumping stations were "permanent work" and that the off-site uninstalled equipment did not qualify as permanent work under this definition. Defendant, therefore, argues that the Plaintiff should not be able to recover damages for equipment that does not fit within this definition.

The Court agrees with the Defendant's interpretation of "part of the permanent work." Applying its ordinary meaning, "part of the permanent work" cannot include uninstalled, unincorporated equipment. *See Jowett*, 234 F.3d at 1369. The purpose of each contract was to construct a pumping station. Therefore, only the pumping stations qualify as "permanent work" under its ordinary meaning. The Court cannot follow Plaintiff's reasoning because then any piece of equipment that would eventually become part of the final project would be considered "part of the permanent work," and there would be no logical way to draw a line between any bolt being manufactured at a factory and the final installed equipment. As applied to this case, equipment that is stored off-site and not yet incorporated into the final pumping station is not "part of the permanent work." Therefore, the Court holds that the ordinary meaning of "part of the permanent work" is a subdivision of the whole that is the chief purpose of the contract, and is incorporated into the final project at its ultimate location. For the above reasons, the Plaintiff is responsible for the cost of the flood-damaged equipment. While the issue might be closer if the equipment was at the pumping station and awaiting only final bolting, for example, that is not this case.

### B. Interpreting Each Contract as a Whole

Plaintiff argues in the alternative that, if the Court were to agree with Defendant's interpretation of the Damage to Work Clause, that interpretation would render four other provisions in the contracts as superfluous. (*See* Pl.'s Opp'n Br. 4-5, 8-10.) The Court disagrees. Even though the Court has already held that the ordinary meaning of "part of the permanent work" clearly establishes responsibility on the part of the Plaintiff, the Court will nevertheless address the four other contract provisions. *See Hughes Commc'ns Galaxy, Inc. v. United States*, 998 F.2d 953, 958 (Fed. Cir. 1993).

### 1. The Permits and Responsibilities Clause

Plaintiff argues that if the Court were to accept Defendant's interpretation, the Damage to Work Clause would be superfluous because it would add nothing to the contractor's responsibility under the Permits and Responsibilities Clause, which places responsibility on the Contractor for all materials delivered and work performed before completion and acceptance of the entire work. Plaintiff contends that the Damage to Work Clause applies before final completion, since the clause must apply to ongoing work so as to not repeat the Permits and Responsibilities Clause.

On the other hand, Defendant argues that, pursuant to the Permits and Responsibilities Clause and absent some exception like the Damage to Work Clause, responsibility for damage to equipment lies with the contractor.  The Defendant further argues that it is irrelevant whether the Damage to Work Clause applies before final completion, since completion is not the issue in the Damage to Work Clause.  Rather, at issue is whether the damaged equipment was "part of the permanent work."  The Court agrees.

Thus, because the Court holds that the damaged equipment was not "part of the permanent work," Plaintiff's argument that the Damage to Work Clause applies to "ongoing work" is irrelevant.  The Damage to Work Clause shifts responsibility imposed by the Permits and Responsibilities Clause from the contractor to the Defendant when "permanent work" is damaged and before final acceptance.  Therefore, the Court holds that the Damage to Work Clause is not superfluous because it reduces contractor responsibility under the Permits and Responsibilities Clause.  It serves as an exception to the Permits and Responsibilities Clause in certain specific instances.  In this case, it would have relieved the Plaintiff from responsibility if the machinery had been installed before the Hurricane.  That would hardly be seen as "superfluous" by the Plaintiff in that hypothetical case!

## 2. The Fixed-Price Construction Clause

In addition, Plaintiff argues that, after the Defendant made progress payments for the equipment identified in the "Payments Under Fixed-Price Construction" Clause (Fixed-Price Construction Clause), title transferred from Plaintiff to Defendant and the equipment became "part of the permanent work."  The Defendant responds that the Damage to Work Clause establishes that the Government's progress payments under the Fixed-Price Construction Clause have no effect upon the contractor's responsibility for the purchased materials.

The Court agrees with the Defendant and holds that Plaintiff's interpretation of the Fixed-Price Construction Clause is not logical.  It would make the other clauses superfluous, instead substituting personal property common law which would on a daily basis give a different answer as to responsibility depending on the flow of purchases and payment.  This would replace the relatively straight forward approach the Contracts take.  Though even under such a regime, it is doubtful Plaintiff would prevail.  Defendant's narrower interpretation is more accurate.  There is nothing in the Fixed-Price Construction Clause to indicate that, once the Government makes progress payments for an item, it becomes "part of the permanent work" and that the government is responsible for its care.

## 3. The Payment for Materials Stored Off-Site Clause

Plaintiff further argues that the Payment for Materials Stored Off-Site Clause establishes that the parties understood that the off-site equipment was to be part of the permanent work, even though uninstalled.  In pertinent part, the Payments for Materials Clause states that payment for off-site materials would be limited to those that are "approved . . . and fabricated to the point

where they are identifiable to an item of work required under the contract." (Pl.'s Mot. on Damage to Work Clause 15.)

The Defendant argues that the Damage to Work Clause does not support Plaintiff's conclusion, and that items that are "identifiable" as work required under the contract are not necessarily "part of the permanent work" for the purpose of responsibility for flood damage. The Court agrees with the Defendant's position and holds that "identifiable" items are not necessarily "part of the permanent work." The concept of "identifiable" is only a payment mechanism. It is not intended to shift legal rights, other than to determine the progress payment schedule. The concept, the Court believes, comes from the Uniform Commercial Code, and deals with the totally different commercial problem of specific performance by buyers, and also the bankruptcy problem.

**4. The Off-Site Storage Clause**

Plaintiff argues that the Off-Site Storage Clause indicates that the parties recognized that certain component parts of the pumping station, which were ready to perform the functions of the final project, would be stored off-site and were "part of the permanent work." The Defendant responds arguing that Plaintiff's interpretation is unreasonable because it would impose on the Defendant the risk of loss for any item immediately upon completion of its manufacture, during transit, and while in storage prior to final installation.

The Court agrees with the Defendant that such an interpretation would nullify the very meaning of the Damage to Work Clause, thus rendering the Government responsible for all component parts without regard to where the parts are when they are damaged. Therefore, the Court holds that the parties' intent with regard to off-site storage is irrelevant to the definition of "part of the permanent work," since they are two separate issues. As a result, the Court holds that the Plaintiff's arguments, regarding the four other clauses, fail to show that the Damage to Work Clause is superfluous in light of the other provisions.

*C. The Parties' Course of Performance*

Finally, Plaintiff contends that both parties were engaged in a course of performance that is contrary to the Defendant's interpretation of the Damage to Work Clause; therefore, the Defendant should be estopped from advancing its interpretation. The Defendant argues that none of the instances cited by Plaintiff establish a course of performance contrary to Defendant's interpretation of the Damage to Work Clause.

In general, course of performance evidence is relevant to contract interpretation only when the terms of the contract are ambiguous. *See United States v. Ford Motor Co.*, 463 F.3d 1267, 1278 (Fed. Cir. 2006). Therefore, absent any ambiguity, the ordinary meaning will control unless the parties intended otherwise and agreed upon it, either explicitly or implicitly. *See Jowett*, 234 F.3d at 1368-69.

Plaintiff argues that four specific instances establish a course of performance contrary to Defendant's interpretation.   First, Plaintiff states that the Defendant told Plaintiff's CEO, in a pre-construction meeting, that "in case of any flood events, the contractor will be protected for damage to the *ongoing* work by the Damage to Work Clause."  (Pittman Aff. ¶ 29 (emphasis added).)   Second, Plaintiff claims that the Defendant's past compensation for flood damage indicated that the Defendant would compensate Plaintiff for the damaged equipment at issue. The past instances of flood damage were related to: (1) the hurricane; (2) various portions of work that were not permanently installed; and (3) clean-up expenses on the project site.  Third, Plaintiff argues that on the Defendant's other projects, which involved drainage improvement in the New Orleans area, the Defendant compensated Plaintiff under the Damage to Work Clause for damage done to portions of incomplete work, permanently installed work, and work that was affixed to the permanent work.  Fourth, Plaintiff claims that the Defendant took possession of the damaged equipment and has been repairing it at the Government's expense, instead of directing Plaintiff to do so.

First, the Court agrees with the Defendant with regard to the pre-construction meeting, because the Government cannot be estopped, except by the conduct of a person with authority to bind the United States.  *See Gresham & Co. v. United States*, 470 F.2d 542, 555 (Ct. Cl. 1972). Here, Plaintiff does not identify who had authority to bind the Government with regard to the alleged modification, and the Defendant argues that the meeting minutes reflect a reference to flood damage that was consistent with the language of the Damage to Work Clause.  (*See* Def.'s App. at 17.)  Thus, the affidavit from Plaintiff's CEO Mr. Pittman, even when read in the light most favorable to the Plaintiff, does not show that the government modified the clause.

Second, with regard to the past compensation for damage to uninstalled work, the Court agrees that the Defendant only compensated Plaintiff for items damaged due to Government-directed flooding.  Here, unlike in the past instance cited by Plaintiff, the damage to uninstalled equipment was not caused by the Defendant's directed flooding, but by an act of God.  Third, the Court further agrees with the Defendant with regard to other projects in the New Orleans area. Here, Plaintiff was never compensated under the Damage to Work Clause for hurricane-caused flooding, which did damage to items that were not "part of the permanent work."  Instead, the Defendant only compensated Plaintiff for damage caused by Government-directed flooding. Finally, the Court agrees with the Defendant that it never took possession of, or responsibility for, the damaged equipment.  Any amount to be paid for the repair and replacement of the equipment was to be paid out of the original contract price.

It is clear to the Court that Plaintiff's other instances are all isolated instances and not inconsistent with Defendant's interpretation.  Therefore, because course of performance evidence is only relevant to contract interpretation if the terms of the instrument are ambiguous, *see United States v. Ford Motor Co.*, 463 F.3d at 1278, and because the ordinary meaning of the Damage to Work Clause is clear and unambiguous, Plaintiff's course of performance arguments do not change the Court's holding.  However, even if the Court accepts that the parties could alter the plain meaning of the clause through their course of performance, factually, they did not do so in this case.

## V. CONCLUSION

For the reasons set forth above, the Court holds that the Damage to Work Clause in the contracts places responsibility on the Plaintiff for the damaged equipment.  Therefore, the Court hereby **DENIES** Plaintiff's Motion for Summary Judgment on the Damage to Work Clause and **GRANTS** Defendant's Cross-Motion for Partial-Summary Judgment on the Responsibility for Damage to Equipment.  The Court further **DENIES AS MOOT** Plaintiff's Motion for Summary Judgment on Deferment of Collection and Defendant's Motion to Strike the same.  The parties are hereby **DIRECTED** to confer and file a joint status report within 60 days of the date of this Opinion and Order, regarding whether there are any remaining issues left for the Court to resolve.

**It is so ORDERED.**

 s/ Loren A. Smith   
LOREN A. SMITH,
Senior Judge